DAVEY *et al.* v. FIRST NAT. BANK OF DEADWOOD.

1. To entitle a party to recover usurious interest under the provisions of Sec. 5198, Rev. St. U. S., such interest must have actually been paid either in money or its equivalent; and the mere charging of such interest in a running account is not a payment of the same within the meaning of that section.

2. Neither will the including of such usurious interest in a promissory note entitle the maker to recover it, until such note is in fact paid.

(Syllabus by the Court.   Opinion filed Jan. 27, 1896.)

Appeal from circuit court, Lawrence county.   Hon. A. J. PLOWMAN, Judge.

Action to recover statutory penalty for taking usurious interest.   Judgment for plaintiffs, and defendant appeals.   Reversed.

The facts are stated in the opinion.

*Moody & Washabaugh,* for appellant.

If any of the items of interest were cancelled or covered by a credit on the open account, of the proceeds of promissory notes given by plaintiffs, or upon which they were liable as endorsers, given to reduce the amount of the overdrafts, the agreement to pay such interest was thereby merged into a contract in writing, and such payment, if made, was not usurious.   Guild v. Bank, 4 S. D. 566, 57 N. W. Rep. 499; Rockwell v. Bank; (Colo.), 36 Pac. Rep. 905.   The law will not appropriate in the absence of an express appropriation any payment of money to the extinguishment of usurious interest. Plaintiffs were not entitled to recover for any interest they had not paid, nor for any interest they had paid in pursuance of a written obligation.   Where there has been a general payment, it is not competent for the bank to apply it to the forfeited interest—to a claim which has no legal existence.   Danforth v. Bank, 1 Cir. Ct. Appeals Rep., 62; Green v. Tyler, 39 Penn. St. 361; Adams v. Mohnker, 41 N. J. Eq. 332; 7 Atl. Rep. 435.

*Wm. R. Steele* and *W. L. McLaughlin,* for respondents.

No general assignment of error should be considered by the court.   State v. Chapman, 1 S. D. 414; State v. Leehman, 2 S. D. 171; Pierce v. Manning, 2 S. D. 617; Bem v. Bem, 4 S. D. 138; 55 N. W. Rep. 1102.

An assignment of error that the court erred in denying a motion for a new trial where the motion was made on two or more distinct grounds, is insufficient.   Stevens v. City of Minneapolis, 43 N. W. Rep. 842; S. C. 42 Minn. 141; Moody v. Tschabold, 53 N. W. Rep. 1023; Hamilton Buggy Co. v. Iowa Buggy Co., 55 N. W. Rep. 255.

The entries in the bank book, made by the proper officers, bind the bank as admission; especially the balancing of the books is conclusive upon the bank, in the same manner as an account stated.   Morse on Bank and Banking, § 291; § 462 *et seq.* and cases cited.

If interest, upon anything but an *express* contract in writing has been paid, between Feb. 23, 1881, and July 1, 1887, in

Lawrence county, a recovery can be had under Sec. 5198, Rev. Stats. U. S.   Guild v. Bank, 4 S. D. 566; 57 N. W. Rep. 499.

It is now conclusively settled, in spite of the contrary decision of the court of appeals of New York (First Nat. Bank v. Lamb, 50 N. Y. 100), that the penalty declared in Sec. 5198, Rev. St. U. S., for the exaction by a national banking association of usurious interest is superior to and exclusive of any penalty established by state legislation.   Bank v. Dearing, 91 U. S. 29; Bank v. Brown, 72 Pa. St. 209; Bank v. Garling House, 22 Oh. St. 492; Wiley v. Starback, 44 Ind. 298; Bank v. Pratt, 115 Mass. 539; Davis v. Randall, Id. 547; Lucas v. Bank, 78 Pa. St. 228.

KELLAM, J.   The respondents, as plaintiffs, brought this action against defendant, a national bank, to recover the statutory penalty provided in Sec. 5198, Rev. St. U. S.   It is alleged that from the 25th day of August, 1882, to the 23d day of November, 1883, the plaintiff paid to the defendant certain sums of money as usurious interest, upon contracts not in writing.   During the time named the defendant bank carried upon its books an open account in the name of John H. Davey, but in which it is conceded both parties plaintiff were interested.   The evidence tended to show that the plaintiffs were carrying on a large mining, milling, and smelting business, and were constant borrowers of the defendant bank; that the sums so borrowed and advanced were generally paid on checks drawn against the account.   It also seems to have been the custom that, when plaintiffs had bullion ready for shipment, it was delivered to the bank, and credit given the account for its estimated value.   When refined, and its exact value ascertained, the difference between its supposed and its ascertained value was credited or charged to the account, as the case might be. Generally the account was overdrawn, and interest charged upon the overdraft.   This was done by the use of memorandum checks made by the officers of the bank, the amount of the

same being charged upon the books of the bank like other checks, entered upon plaintiffs' pass book as often as balanced, and returned to them with and in the same manner as other checks drawn by themselves and paid by the bank. Several times the plaintiffs executed their notes to the bank, covering a part or all of the overdraft, and received credit therefor. Once or twice the notes so given exceeded the overdraft, so that when thus credited the account showed a balance in plaintiff's favor. On one occasion the plaintiffs procured accommodation notes signed by another person, and endorsed by plaintiffs to the bank, and received credit therefor on the account. On the 23d day of November, 1883, the plaintiff's indebtedness to the defendant bank and to the Lead City Bank amounted in round numbers to $79,000, for which amount plaintiffs made their notes, secured by mortgages to O. J. Salisbury, president of defendant bank, as trustee for it and the said Lead City Bank. These mortgages were subsequently foreclosed, but after the commencement of this action. Upon the trial the plaintiffs recovered judgment, and the defendant bank appeals.

The main questions are two: Whether the facts proved show that the amounts so charged as interest were ever in fact paid by plaintiffs, and whether the interest charged can be justified on the theory that there was an express contract in writing fixing the rate of interest. Simply charging interest against plaintiff's account, thereby enlarging their overdraft, obviously would not entitle plaintiffs to recover the penalty sued for in this action; for that is recoverable only "in case the greater rate of interest has been paid." Rev. St. U. S. § 5198; Brown v. Bank, 72 Pa. St. 209; Hall v. Bank, 30 Neb. 99, 46 N. W. 150. If this interest so charged to plaintiffs was ever actually paid by them, it was either through their deposits of bullion or by their notes, for these were the only credits claimed or proved. We do not think the bullion deposits could have had this effect, for the fair meaning and force of the undisputed evidence is that, by a well-understood arrangement between the

plaintiffs and the bank, the advance credits upon the bullion were anticipated and appropriated when made. Mr. McPherson —an officer of the bank, to be sure, but plaintiffs' witness—testified very fully upon this point. He says: "In almost every instance where these credits were thus given, it was under an arrangement that he could draw against his credit, notwithstanding this overdraft, which might be large at the time. * * * Whenever Mr. Davey had any bullion to ship, he would usually deliver it to us or to the express company with a statement of what it was and an estimate of its probable value. Taking this as a basis, we would advance him credit on our books for sometimes a little less and sometimes the full value, perhaps, for the bullion, so that he could anticipate the returns and draw against it. * * * It was an invariable rule during the course of this whole business, between the dates specified in this case, the advances made upon his bullion were predicated upon his necessities at Galena. It was almost invariably the case that he either anticipated his bullion product, or that he drew immediately after the bullion was delivered for his current expenses. Indeed, his expenses were always more than his bullion. * * * During this whole period there was a very large overdraft generally, and if we made an advance to him, say of $10,000 or of $6,000, that very credit would still leave an overdraft; but the understanding with Mr. Davey always was, of course, on his solicitation, that we would pay his checks, notwithstanding his current overdraft against his bullion, against the credit we had given upon this bullion. That was invariably the case."

This evidence satisfies us that, so far as the advances or credits on account of bullion shipments were concerned, there was no appropriation, either by the plaintiffs or by the bank, to the payment of these interest charges, but, on the contrary, that the plaintiffs turned it over to the bank, and the bank received it, with the understanding that the credits arising therefrom should be used for other purposes, to wit, to pay the cur-

rent expenses and demands of plaintiff's milling business. Neither do we think that the putting of a part, or all, of this overdraft, including interest charges, into notes, constituted a payment of such overdraft. It simply changed the evidence of the indebtedness from a book account into promissory notes, and was no payment until the notes were paid. It does appear however, that in one instance, January 10, 1883, there was a definite appropriation of a bullion credit to the payment of two certain notes. Mr. McPherson testifies: "In one case, when there was an advance of $17,000 made, that was appropriated to the payment of two notes, on the 10th day January, 1883. These two notes were paid on the 10th day of January, 1883— one note for $8,000 and one of $8,500. They were renewed. They were originally given in November, perhaps, of a previous year, and renewed about the first of the year, and paid on the 10th of January, 1883." Again, referring to the same transaction, he says: "There were two notes, one of $8,000 and one of $8,500, which were charged up against the bank—$17,000— in January, 1883. Those two notes were paid from the returns. They were paid from the advance made upon the bullion." From these very explicit statements of Mr. McPherson, who was the cashier of the bank, we understand that these two notes of $8,000 and $8.500 were actually paid out of the $17,000 deposit of bullion, so that whatever interest those notes represented was paid by the plaintiffs and received by the defendant. If we understand the meaning of the witness, this would be the legal effect of his testimony. We have studied this entire record carefully, and have endeavored to give thoughtful attention to every question discussed by counsel, but if we were to multiply words we could only state as our final conclusion that, upon the facts disclosed, the only interest shown to have been actually paid was whatever was paid by the bullion credit of January 10, 1883, and that upon such amount, whatever it is found to be, the plaintiffs' recovery must be predicated. There are one or two other questions which I should feel inclined to dis-

cuss and pass upon, but as the judgment must be reversed for reasons stated, and it is not certain that the same questions will arise in another trial, the majority of the court think it better to withhold expression upon them. This being our view of the effect of the evidence, we cannot do otherwise than reverse the judgment, and remand the case for a new trial, the plaintiffs being entitled to recover only on account of such illegal interest, if any, as was contained in the two notes—one of $8,000 and one of$ 8,500—which were paid January 10, 1883. The judgment is reversed, and the case remanded for a new trial.