### RYERS *v.* TUSKA.

*(Common Pleas of New York City and County, Additional General Term. June 1, 1891.)*

STATUTE OF FRAUDS—MEMORANDUM—RULES OF STOCK EXCHANGE.

A contract for the sale of stocks, of which there is no memorandum in writing, as required by the statute of frauds, cannot be enforced, though the contract was made in a stock exchange of which both parties were members, the constitution and by-laws of which provides that "all offers to buy and sell securities shall be binding," and that "any member who may fail to comply with his contracts, or who may become insolvent, shall be suspended until he has settled with his creditors."

Appeal from eighth district court.

Action by George M. C. Ryers, as assignee of Franklin B. Torrey, against David S. Tuska. The following opinion was filed by JEROLOMAN, J., in the district court: "This case is brought to recover $127.10 on an alleged stock transaction. It appears by the evidence that on the 19th day of September, 1888, one Franklin B. Torrey requested the defendant in this action to pur-

chase for him, through the name of Norman J. Murray, 30 shares of the common stock of the Chicago, Milwaukee & St. Paul Railway, at 64⅜ per share, amounting to $1,931.35. Mr. Torrey states that he made a memorandum on his book of the transaction, and that the defendant Tuska made a memorandum on his book also. There is no evidence in the case showing that Tuska subscribed his name to any memorandum of that alleged transaction, and delivered the same to either Torrey or Murray. The statute of frauds provides that every contract for the sale of any goods, chattels, or things in action, for the price of $50 or more, shall be void, unless a note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby, or unless the buyer shall at the time pay some part of the purchase money. In this case no memorandum of the contract was subscribed by the defendant Tuska, nor did Torrey pay any part of the purchase money to the defendant, Tuska. No part of the purchase money was paid, none of the property was delivered, and there was no note or memorandum of such contract made and signed between the parties. Such a contract the statute declares to be void, and no by-law or constitution created or established by any association or society of individuals can circumvent or annul an express statute. No rule or by-law can be established by the Consolidated Exchange to take this case out of the statutes. The by-laws and constitution of an association, incorporated or otherwise, so far as the members are concerned, can only punish them by fines and penalties, and expel them, and deny unto them all rights and privileges of the association provided by their constitution and by-laws. Article 15, § 1, of the constitution of the Consolidated Exchange provides: 'Any member who may fail to comply with his contracts, or who shall become insolvent, shall be suspended until he has settled with his creditors.' So far as the association is concerned, that is binding between the members, and the courts will give full force and effect to it; but, wherein their constitution and by-laws conflict with or assume to override express provisions of law, in that case the courts take no cognizance of such constitution and by-laws. Until a paper writing is signed by the party to be charged thereby, and duly delivered, it does not become a contract, within the statute of frauds. In the case of *Johnson* v. *Brook*, 31 Miss. 17, the court say: 'We have been able to find no case in which a writing signed by a party, and kept in his possession, without delivery to the other, has been held to be a compliance with the statutes.' Also, in the case of *Freeland* v. *Charnley*, 80 Ind. 139, the court say: 'Until delivery, there is not a spark of vitality in the instrument; it is no more than a mere piece of paper, covered with written or printed characters, and possesses no more force than a poem or an historical essay, locked in the desk of the person described as grantor.' Judgment is therefore rendered in favor of the defendant, dismissing the complaint, with seven dollars costs." Plaintiff appeals.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*Joseph M. Williams,* for appellant. *Benjamin Tuska,* for respondent.

BOOKSTAVER, J. We have examined this case with care, but do not find that the justice committed any error either in his findings of fact, or his application of the law to the facts as found, and deem it necessary to add but little to what he has said concerning the law governing the case. It is clear there was no memorandum made or signed by the parties sufficient to take the transaction out of the statute of frauds at the time the verbal agreement was made. It is true that later in the day the defendant handed up notice that he would have to suspend, which was signed by him; but the evidence was entirely insufficient to warrant the justice in finding that the memorandum showing his contracts for the day, which was handed to the clearing committee, was made by him or given to the committee by his authority. Consequently the case cannot be brought within *Peabody* v. *Speyers*, 56 N.

Y. 230.    The contention that, although the contract was void under the statute of frauds, yet that it was binding between the parties under the constitution and regulations of the Consolidated Exchange, is based upon section 1, art. 3, of the by-laws governing dealings in railroad and other securities, which provides that "all offers to buy and sell security shall be binding." But this by-law was not introduced in evidence, and, even if it had been, we do not think it would have availed the appellant. In *Shapley* v. *Abbott*, 42 N. Y. 443, EARL, C. J., delivering the opinion of the court, said: "A party may, undoubtedly, without trenching upon public policy, waive the defense of usury or of the statute of frauds, or of the statute of limitations, by omitting to set up the defense when sued; and he may waive his statute exception by turning out exempt property when the officer comes with the execution. But no case has occurred to me in which a party can in advance make a valid promise, founded in public policy, shall be inoperative."

The same case is also conclusive of the appellant's contention that the defendant is estopped from pleading the statute of frauds.    If there is an estoppel at all, it is an estoppel *in pais*.    This is used to preclude a party from obtaining by evidence that which he has before expressly or positively denied, or disproving that which he has expressly or tacitly admitted, when the other party has acted on the faith of the admission or denial in such a manner that he will be injured unless the same is held conclusive.    An admission by a person as to the law, or as to the legal effect of his contract, is never held to estop him.    It is also necessary that the fact should be one of which the party claiming the benefit of the estoppel was ignorant.    There can be no such contention in this case.    Both parties knew all the facts of the transaction at the time it occurred, and the admission, if any, was in regard to the law, and not the facts.    The contention that the contract of sale had been executed, and the statute of frauds could not be pleaded against it, as well as the contention that the defendant is liable for money paid out and expended at his request, are both founded upon the theory that the defendant was bound by the constitution and by-laws, and that the action of the proper committee of the Consolidated Exchange, in completing the contract, had a valid basis in law.    But, as before shown, this was not the case, and therefore they cannot prevail.    The judgment should be affirmed, with costs.