HIRAM TOMPKINS, Respondent, *v.* CORNELIUS SHEEHAN,
Appellant.

STATUTE OF FRAUDS — PAROL AGREEMENT FOR SALE OF STOCK NOT
VALIDATED BY ACCEPTANCE OF SHARES SOLD BY OTHERS. WHERE
INTERESTS OF VENDORS ARE SEPARATE. A disputed parol agreement
for the sale of certain shares of stock for the price of more than fifty
dollars, in connection with the sale of other shares of the same stock by
others to the same person, is not taken out of the Statute of Frauds so as
to uphold an action for the price, by the fact that the other shares were
accepted and paid for, where the interests in the transaction, based upon
the distinct and several ownership of the stock, were separate, although
it is found that there was an actual agreement to buy all of the shares.

*Tompkins* v. *Sheehan*, 9 App. Div. 623, reversed.

(Argued March 10, 1899; decided April 18, 1899.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered Sep-
tember 29, 1896, affirming a judgment in favor of plaintiff
entered upon a verdict, and an order denying a motion for a
new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*E. Countryman* for appellant. The plaintiff was errone-
ously permitted to show the negotiations and terms of the
prior contracts in February and April. (1 Greenl. on Ev.
§§ 51, 52, 448; *Carter* v. *Pryke*, Peake's Cas. 95; *Holling-
ham* v. *Head*, 4 C. B. [N. S.] 388; Best's Principles of Evi-
dence, § 251; *Phelps* v. *Conant*, 30 Vt. 277; *Walworth* v.
*Barren*, 54 Vt. 677; *Harris* v. *Howard*, 56 Vt. 695; *I. M.
Bank* v. *Murdock*, 62 Mo. 70; *Jackson* v. *Smith*, 7 Cow.
717; *Burke* v. *Kaley*, 138 Mass. 464; *Sweet Case*, 129
Mass. 36; *Howe* v. *Whitehead*, 130 Mass. 216.) The court
erred in permitting the witness Hanson, under the defend-
ant's objection and exception, to testify that he told Bockes,
when informed of the defendant's proposal to purchase his

stock, that he " was willing to sell at what he paid for it, with interest at six per cent, providing the others were." (*Tompkins* v. *Sheehan*, 82 Hun, 346 ; *Mason* v. *Corbin*, 88 Hun, 540 ; *Flannery* v. *Van Tassel*, 127 N. Y. 631 ; *Tousley* v. *Barry*, 16 N. Y. 497 ; *Truax* v. *Slater*, 86 N. Y. 631 ; *Williams* v. *Manning*, 41 How. [U. S.] 458.) The trial court erred in allowing the witness Bockes to state his own conclusion as to whether the understanding of the defendant and himself, at the time of the making of the contract of sale, had reference to a prior arrangement between the owners or not. It is the business of witnesses to state facts, and it is the province of the jury under the direction of the court to draw such inferences or conclusions from those facts as in their judgment they will warrant. (*Gibson* v. *Williams*, 4 Wend. 320 ; *Lincoln* v. *S. & S. R. R. Co.*, 23 Wend. 425 ; *Morehouse* v. *Mathews*, 2 N. Y. 514 ; *Cook* v. *Brockway*, 21 Barb. 331 ; *Teerpenning* v. *C. E. Ins. Co.*, 43 N. Y. 279 ; *Nicolay* v. *Unger*, 80 N. Y. 54.) The agreement, as proven on behalf of the plaintiff, for the sale and delivery of the 200 shares of stock to the defendant, is void under the Statute of Frauds, the contract not being in writing, and no part of the purchase money having been paid or delivery made of any portion of the property. (2 R. S. 136, § 3 ; *Seymour* v. *Davis*, 2 Sandf. 239 ; *Deming* v. *Kemp*, 4 Sandf. 147 ; *Aldrich* v. *Pyatt*, 64 Barb. 391 ; *Tipton* v. *Feitner*, 20 N. Y. 423 ; *Ming* v. *Corbin*, 142 N. Y. 334 ; *Pierson* v. *Crooks*, 115 N. Y. 540.)

*Charles S. Lester* for respondent. The objections and exceptions to the evidence of Bockes as to the statement he made to the defendant at and before the time a portion of the stock was delivered to the defendant, were properly overruled. (*Van Ingen* v. *M. E. Pub. Co.*, 156 N. Y. 376 ; Story on Agency, §-28.) The objections to the testimony of Mr. Hanson, in reference to the original purchase of this block of stock from Hotchkiss, at the instance and with the knowledge and concurrence and for the benefit of the defendant, were prop-

erly overruled. · (*Blossom* v. *Griffin*, 13 N. Y. 569 ; *Zimmer* v. *Settle*, 124 N. Y. 37 ; *Schroeder* v. *Frey*, 114 N. Y. 266 ; *Matter of N. Y. C. R. R. Co.*, 49 N. Y. 419 ; *Griffiths* v. *Hardenbergh*, 41 N. Y. 464 ; *Woodruff* v. *Woodruff*, 52 N. Y. 57 ; *White's Bank* v. *Myles*, 73 N. Y. 335 ; *Willson* v. *Law*, 112 N. Y. 536 ; *Robb* v. *Hackley*, 23 Wend. 50 ; *Knapp* v. *Warner*, 57 N. Y. 668.) The contract of sale was a joint contract by plaintiff, together with Gage, Bockes, Richards and Hanson, to sell to the defendant the block of Hótchkiss stock, consisting of 1,985 shares, and the delivery of a part made it a valid contract under the Statute of Frauds. (Pars. on Cont. 13 ; 1 Chitty on Plead. 7 ; Code Civ. Pro. § 499 ; *Ming* v. *Corbin*, 142 N. Y. 340 ; *Reynolds* v. *C. F. Ins. Co.*, 47 N. Y. 597 ; *Van Tuyl* v. *W. F. Ins. Co.*, 55 N. Y. 657 ; *Groth* v. *Washburn*, 89 N. Y. 615.)

GRAY, J. The plaintiff has sought by this action to recover of the defendant the purchase price of 200 shares of the capital stock of the Congress Springs Company ; which, in his complaint, he alleges to have been included in a sale of 1,985 shares to the defendant, as effected for the several owners through the agency of one of their number. It is therein, further, averred that the agreement with respect to the sale of the 1,985 shares was that it should be conditioned upon the defendant's purchasing, and paying for, the whole thereof · at the price fixed, and that, in pursuance of the agreement, 1,785 shares were delivered to, and paid for by, the defendant ; but that, by reason of the plaintiff's certificate having been mislaid, his shares were not included at the time of the delivery. The defendant, by his answer, admitted the purchase of the 1,785 shares of stock, but denied the allegations of the complaint relating to the plaintiff's shares and, as a further defense, alleged the invalidity of the agreement referred to in the complaint under the Statute of Frauds.

The circumstances, as developed upon the trial with respect to this controversy, showed that in February, 1890, a block of 1,985 shares of the stock in question was purchased from

one Hotchkiss by five persons, of whom the plaintiff was one. The purchase would appear to have been made at the instance, or suggestion, of the defendant; who, soon thereafter, through the controlling interest of this holding, was able to elect his own board of directors and to become the president of the company. The 1,985 shares were registered upon the books of the company in the names of the five persons by whom they had been bought, in the several amounts to which their interests in the purchase entitled them. Subsequently, and in December of the same year, the defendant, through a lawyer, approached Mr. Bockes, who held 496 of the 1,985 shares, with the proposition to buy the whole block of stock. Bockes communicated directly with all of the holders of the shares, except the plaintiff, who was at the time in Chicago, and received their consent to a sale at the price which they had paid for them, with interest at the legal rate added to the date of delivery. Mr. Bockes telegraphed to the plaintiff and testified that he received a reply, assenting to the sale of his shares. That telegram appears to have been lost and the only one produced by the plaintiff was sent the day after the shares of the other four persons had been delivered to the defendant. On a certain day in December, Mr. Bockes delivered to the defendant, and received from him the agreed price for, 1,785 shares. He had not received the plaintiff's certificate of stock before the closing of the transaction with the defendant, by reason of its not having been found, and when he did receive it, a few days later, he left it at the office of the defendant's attorney; where it remained for some time, before he returned it to the plaintiff by reason of the defendant's refusal to consider it as included in his purchase of the stock. On behalf of the plaintiff, the evidence went to show that the sale was expressly conditioned upon the 1,985 shares being sold as an entirety and that the defendant agreed to that arrangement. On the part of the defendant, the evidence was that the plaintiff's shares were not included in the transaction; the defendant's testimony, and that of his attorney, contradicting explicitly the testimony given for the

plaintiff and denying that there was any other arrangement entered into than one for the purchase of the 1,785 shares. The issue of fact, as to what the agreement was between Mr. Bockes, acting for himself and the other holders of the Hotchkiss stock, and the defendant, was submitted to the jury, who found in favor of the plaintiff. It was the view of the trial judge, and he so instructed the jury, that if the agreement was to purchase 1,985 shares of stock, the plaintiff's 200 shares being included in that number, and the delivery to the defendant was made with the understanding that the plaintiff's shares were to be delivered as part of the entire purchase of 1,985 shares, the case would be taken out of the operation of the Statute of Frauds. Exceptions were taken to the charge in this respect, as they had also been taken to the refusal of the trial judge to dismiss the complaint for the invalidity, under the Statute of Frauds, of the alleged parol agreement for the sale or purchase of the plaintiff's shares of stock.

The question of law, which is thus presented, is sought to be met and answered by the plaintiff, who is respondent here, upon the ground that it was proved, and found as a fact by the jury, that the contract of sale was the joint contract of the plaintiff and the four other persons, who, with him, had become the owners of the Hotchkiss shares. That being the fact established by the verdict, he argues that the delivery of a part of the shares made the contract valid under the Statute of Frauds. In our opinion, however, the facts of this case were not such as to prevent the operation of the statute; which provides that every contract for the sale of any goods, chattels, or things in action, for the price of $50.00 or more, shall be void, unless a note or memorandum be made in writing and subscribed by the parties to be charged thereby; or unless there be acceptance by the buyer, in whole or in part, or a part payment of the purchase money. (2 R. S. 136, sec. 3.) Whatever the understanding or agreement between the plaintiff and his associates with respect to the Hotchkiss shares, in the purchase of which they had combined, it is undisputed that that stock was divided up between them and, thereafter, held in

severalty; each one becoming the separate and registered holder of the shares allotted to him. When it was proposed by the defendant to purchase these shares there was no agreement, nor any memorandum in writing concerning it, between him and Mr. Bockes, as representing the five owners of the stock. There was none between the stockowners themselves, affecting their ownership. They were, as between themselves, as they were to the world, the separate owners of the shares standing in their names and there was nothing in the transaction conducted by Mr. Bockes for a sale of the stock which legally bound them to it. The mere fact, which must be deemed to have been established by the verdict, that the defendant had agreed with Mr. Bockes to buy all of the 1,985 shares, would not make it any the less as to each stockholder a separate transaction which he might elect to carry out, if he chose. There was not such an agency in Mr. Bockes as would have been effectual to bind his associates and certainly nothing, so far as this plaintiff is concerned, beyond his telegraphic expression of a willingness to sell his stock, if the other owners would sell. The separateness of interest in the transaction is illustrated in this very action, which is commenced by the plaintiff alone to recover as for the sale of his own stock. It is the distinct and several ownership of the shares, which interposes a difficulty in the way of the plaintiff's recovery, that is not to be overcome by the finding of the jury that the actual agreement of the defendant was to buy all of these shares. The cardinal purpose of the Statute of Frauds was to lessen the opportunities for the perpetration of fraud by compelling the parties to put their agreements in writing, when their transactions involve more than a certain pecuniary value; but it recognized that an incontestable fact might equally establish what the agreement between them was and, therefore, provided that acceptance, or a part payment, would be sufficient and would obviate the necessity for the production of some written evidence.

The provisions of the Statute of Frauds may not be availed of to effectuate a fraudulent purpose and, where that is clearly

seen to be the case, it not infrequently has happened that the court has found a way to afford the relief, which an equitable consideration of the facts would warrant. But this is no such case. The question is, purely, one whether this plaintiff shall recover from the defendant, under an alleged agreement on his part to buy 200 shares of stock; which he denies and when the evidence as to its making rests in parol and is irreconcilably conflicting. Under the circumstances, there is no legal reason why the defendant may not insist upon his strict legal rights under the Statute of Frauds.

It is the plaintiff's misfortune that the matter of the sale of his stock rests in parol; as it was, also, his misfortune, upon his version of the facts, that his certificate of stock could not be found in time to be delivered with the certificates of the other stockholders. It is a misfortune for which no legal remedy is available, and the case may be said, not inaptly, to illustrate that precise situation between the parties to a transaction, which the statute was intended to apply to and to provide for.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

BARTLETT, J. (dissenting). The 1,985 shares of stock involved in this litigation were bought as a block by a combination of which plaintiff was one. This purchase was arranged by the defendant and in his interest, its object being to give him control of the corporation.

This purpose was carried out and defendant elected president. Some months later the defendant stated, through his representative, that he desired to purchase this block of stock which the syndicate or combination owned. Its value consisted in being handled as a block, and the voting power it carried with it. It was agreed that no member of the combination should sell his stock unless all consented and this was known to the defendant. The sale was made to the defendant of this entire block of stock as the joint transaction of the syndicate and with his full knowledge and consent.

Bockes, a member of the combination, and who conducted the sale to defendant, delivered all the stock, except two hundred shares standing in plaintiff's name, which was not in his possession. In less than a week Bockes received plaintiff's certificate, transferred in blank, and left it at the office of defendant's representative.

The stock was allowed to remain in this condition for some months, the defendant acquiescing in the block sale to him. Plaintiff returned to this state later and demanded his share of the joint proceeds of sale. Defendant did not repudiate the transaction, but asked for time, saying to plaintiff, "you know it is on interest."

The defendant obtained repeated extensions from plaintiff.

All of these facts have been proved to the satisfaction of two juries, and the Appellate Division has affirmed.

This judgment can be reversed only on one theory, to wit, that the owners of personal property in severalty, so far as the Statute of Frauds is concerned, cannot enter into a joint venture and make a joint sale to a third party of the entire property; that each individual interest in the joint venture is a separate sale.

I dissent from this proposition and vote for affirmance.

All concur with GRAY, J., for reversal, except BARTLETT, J., who files dissenting memorandum for affirmance, and MARTIN, J., who concurs with BARTLETT, J.

Judgment reversed, etc.