WOOLLEY v. LOOSE.

No. 3455. Decided December 27, 1920. (194 Pac. 908.)

1. BROKERS—STOCKBROKER WHO SOLD CUSTOMER'S STOCK AND ADVANCED PRICE TO HIM CANNOT RECOVER THEREFOR FROM PURCHASER. Where plaintiff stockbroker was solicited to sell stock by a customer, and did so to defendant's agent, selling the customer's stock and not his own, he cannot recover from defendant the price of the stock because he advanced the price less his commission to his customer, plaintiff broker not having purchased his customer's stock, the doctrine applying

Appeal from Third District

that in an action by an agent for an undisclosed principal on a contract, made by an agent in his own name, any defense good against the principal is available against the agent.

2.   BROKERS—STOCKBROKER IN MAKING SALE FOR CUSTOMER CAN ACT ONLY AS AGENT. In making sale of a customer's stock, a stockbroker legally can act only in one capacity, that of agent, though whenever the agency has been executed the relationship of agent ceases.

3.   FRAUDS, STATUTE OF—STATUTE APPLIES TO TRANSACTIONS INVOLVING STOCKS. The statute of frauds applies to transactions involving the purchase and sale of stocks.[1]

4.   FRAUDS, STATUTE OF—BY-LAW OF STOCK EXCHANGE NOT A "WAIVER" BY BROKER OF RIGHT TO SET UP STATUTE. By-law of stock exchange, in which both plaintiff and defendant brokers acted, providing it was the duty of the seller of shares to deliver them to the purchaser or such other broker as he might designate at his office, etc., held not to have constituted a waiver by defendant stockbroker of right to set up the statute of frauds as a defense when sued for the purchase price of stock sold him by plaintiff broker; "waiver" being the voluntary relinquishment of a known legal right implying an election to dispense with something of value or forego some advantage which the party waiving might have insisted upon (citing Words and Phrases, Second Edition, Waiver).[2]

Appeal from District Court, Third District, Salt Lake County; *H. M. Stephens*, Judge.

Action by Fred R. Woolley against C. E. Loose. From judgment for defendant, plaintiff appeals.

AFFIRMED.

*Ray & Rawlins*, of Salt Lake City, for appellant.

*Dickson, Ellis, Lucas & Adamson*, of Salt Lake City, for respondent.

[1] *Walker* v. *Bamberger*, 17 Utah, 239, 54 Pac. 108.

[2] *O'Donnell* v. *Parker*, 48 Utah, 578, 160 Pac. 1192, distinguishing *Loftis* v. *Insurance Co.*, 38 Utah, 532, 114 Pac. 134.

FRICK, J.

The plaintiff brought this action in the district court of Salt Lake county against the defendant to recover upon five causes of action. Two of the causes of action have been eliminated, and hence only three remain to be considered.

The causes of action will, for convenience, be designated as first, second, and third.

As a first cause of action, plaintiff, in substance, alleges that at the time stated in the complaint he was a stockbroker and a member of the Salt Lake Stock & Mining Exchange, hereinafter referred to as Exchange merely, and that he sold and delivered to one Hatfield as agent of defendant, who was also a stockbroker and member of such Exchange, 5,000 shares of a certain mining stock for the sum of $6,000, no part of which sum has been paid. In the second cause of action it is alleged that the plaintiff as aforesaid sold 6,000 shares of said mining stock to the defendant through the same agent for the sum of $7,200; that said stock was tendered to the defendant and acceptance thereof refused by him, by reason of which refusal plaintiff was damaged in the sum of $1,200. In the third cause of action it is alleged that another firm of stockbrokers had sold to the defendant through his agent aforesaid 9,000 shares of the same mining stock for the sum of $10,800, and that said stock was tendered to the defendant and acceptance by him refused; that damages resulted from the refusal to accept said stock amounting to $1,575; that said claim was duly assigned to the plaintiff.

Plaintiff demanded judgment on all of said causes of action for the several amounts before stated.

The defendant answered plaintiff's complaint, and to the first cause of action interposed two defenses: (1) Denying the authority of the alleged agent Hatfield to represent him in the alleged transaction; and (2) alleging that the plaintiff was the agent of, and as such sold the stock for, the same person who directed and for whom the alleged agent of the defendant purchased stock—that is, defendant relied on

what is designated as the "common principal" defense. To the other two causes of action, in addition to the foregoing defenses, the defendant interposed the further defense of the statute of frauds.

Upon the foregoing issues the case was tried to the court without the intervention of a jury. The court made elaborate findings of fact and conclusions of law, all of which were in favor of the defendant, and entered judgment accordingly, from which judgment plaintiff appeals.

While plaintiff's counsel have assigned numerous errors, yet, in their briefs, they frankly state:

"There is no dispute as to the facts in this case, and this appeal will be decided upon the law applicable to the undisputed facts."

They, however, vigorously assail some of the conclusions of law and the judgment entered as aforesaid.

In accordance with the statement just made, counsel's arguments are limited to a discussion of the legal principles which naturally arise out of the several defenses set up in defendant's answer.

As before indicated, the court's findings and conclusions of law are too voluminous to be stated at length within the limits of an opinion. We shall therefore state what we deem to be the material and controlling facts in our own way.

The plaintiff, at the time of the transactions in question, was a stockbroker, and, as such, was also a member of the Exchange. The defendant was likewise a stockbroker and a member of said Exchange. The defendant had, however, authorized one Hatfield to represent him as broker, which authority was contained in a letter written by the defendant which reads as follows:

"Provo, Utah, Mar. 6, 1916.

"Salt Lake Stock & Mining Exchange, Salt Lake City, Utah— Gentlemen: Mr. H. T. Hatfield, being associated with me in business, I hereby appoint him my agent, to act in my behalf as a member of the Exchange (according to the rules of the Exchange), I being responsible for any and all business transacted by Mr. Hatfield as my representative.

"Very truly,               C. E. Loose."

The letter of defendant was based upon a by-law of the Exchange. The letter and the authority of Mr. Hatfield to act for the defendant was approved by the governing board. On the 14th day of November, 1917, one A. F. Palm, who was also a stockbroker and member of the Exchange, gave to plaintiff an order to sell for him 5,000 shares of a certain mining stock at $1.20 per share. On the same day Palm ordered Hatfield, who was acting for the defendant as aforesaid, to purchase for Palm 5,000 shares of the same stock at the price aforesaid. The plaintiff did not know that Palm had ordered Hatfield to purchase 5,000 shares of said stock, although it seems Palm suggested to the plaintiff at the time that Hatfield would perhaps purchase the stock at the price aforesaid. After plaintiff had been ordered to sell and had been informed that Hatfield would perhaps buy the stock, he called the latter on the phone and inquired of him whether he would purchase the 5,000 shares of stock at the price aforesaid without, however, disclosing whose stock he was offering for sale. Hatfield agreed to purchase the stock at the price stated, which was done in pursuance of Palm's order as aforesaid but without knowing that it was Palm's (his principal's) stock that he was buying, although he was buying it for Palm. After Hatfield had agreed to purchase the stock, plaintiff notified Palm of the sale, whereupon the latter personally delivered the 5,000 shares of stock to plaintiff so that he might deliver the same to Hatfield. At the time Palm delivered the stock he informed plaintiff that he was in need of funds, and plaintiff gave Palm a check for the amount of the stock less plaintiff's commission, amounting to $30. Plaintiff, on the following day, delivered the 5,000 shares of stock to Hatfield and received the latter's check in settlement. The latter immediately delivered the 5,000 shares of stock purchased by him from plaintiff for Palm to the latter, and received his check in settlement therefor. The foregoing transactions respecting the sale and purchase of the stock occurred over the phone and while both parties, plaintiff and Hatfield, were in their respective offices. The delivery of the stock was, however, made by the plaintiff to

Hatfield on the floor of the Exchange, but not as an Exchange transaction. After receiving Palm's check for the 5,000 shares of stock, Hatfield presented the same for payment, and payment was refused for want of funds. Hatfield had intended to pay the check he gave plaintiff out of the funds he realized from Palm's check, and, in view that Palm's check was not paid, Hatfield's check likewise remained unpaid. Palm being insolvent, plaintiff seeks to recover from the defendant on the first cause of action the amount he advanced to Palm on the stock, upon the theory that defendant is liable for the acts of his agent Hatfield and that plaintiff was the owner of the stock.

The facts respecting the second cause of action are substantially the same as those in the first cause of action, except that the transaction took place on the floor of the Exchange and that Hatfield, when the stock was tendered to him, refused to accept the same, and hence the stock was sold and recovery is sought for the difference between the price Hatfield agreed to pay and the price realized from the sale of the stock on the Exchange.

The transaction on which the third cause of action is based took place between Hatfield and another firm of brokers, but involved Palm's stock, as in the other two causes of action. The facts are substantially the same as in the second cause of action, and the claim having been assigned to plaintiff by the other stockbrokers, he sues to recover the difference between the price Hatfield agreed to pay for the stock and the amount it was subsequently sold for on the Exchange.

The transactions relating to the second and third causes of action resting entirely in parol without any written memorandum, and without part payment, and without acceptance of the stock or any part thereof, the defendant, in addition to the defenses urged against the first cause of action, also insists that the, sales of stock relied on in these two causes of action are not enforceable under the statute of frauds, and in the court below relied on, and now relies on, that defense.

Recurring now to the first cause of action: Defendant's counsel very earnestly contend that in making the purchase

of the 5,000 shares of stock off the floor of the Exchange and in the manner it was made Hatfield had exceeded his authority, and hence the defendant is not legally liable for that reason. Keeping in mind the contents of defendant's letter and the purposes for which it was given, the writer is impressed with the force of defendant's contention. In view, however, that we have arrived at the conclusion that the defendant is not liable on the first cause of action for the reasons hereinafter stated, it becomes unnecessary to decide whether the letter conferred authority upon Hatfield to act for the defendant in transactions other than those occurring on the floor of the Exchange, and hence we express no opinion upon the question of authority but shall assume that such authority existed. Moreover, if the judgment in the first cause of action is right for any reason, it is immaterial whether it could also be sustained for other reasons.

The district court held that, in view that Palm was the common principal of both defendant and plaintiff, therefore any defense which the defendant could successfully interpose against Palm if he were suing upon the transaction could, with like effect, be interposed against the plaintiff. Upon that subject the law is clearly stated in 31 Cyc. p. 1565, in the following words:

"*In General.*—In an action by an agent for an undisclosed principal on a contract made by the agent in his own name, any defense good against the principal is available against the agent."

In 2 Mechem on Agency (2d Ed.) § 2405, the author quotes and adopts the following from Ewell's Evans on Agency, 387:

"Where the agent sues in his own name the defendant may avail himself of all defenses which would be good at law and in equity: (a) As against the agent who is the plaintiff on the record, or (b) as against the principal for whose use the action is brought, provided, of course, a principal exists."

Counsel for plaintiff, as we understand them, do not—at least, not seriously—controvert the foregoing doctrine. They insist, however, that it has no application in this case for the reason that the plaintiff is suing in his own right as the owner of the stock which was sold to Hatfield. We remark

that in view of the undisputed facts of this case if this contention were not made by counsel for whose probity and judgment we entertain the highest respect we should not feel inclined to do more than to announce our conclusions in support of the judgment. In view, however, that counsel very earnestly contend that the agent is suing and has the right to maintain the action as the owner of the stock which he sold to the defendant through Hatfield, we shall pause long enough to briefly analyze the transaction.

When Palm solicited the plaintiff, as his broker, to sell the stock, Palm certainly thought that it was his stock that plaintiff was to sell to Hatfield. Again, when the sale was made, plaintiff manifestly sold Palm's stock, and not his own. After the sale was made, plaintiff at once notified Palm that the stock had been sold and Palm delivered it to plaintiff so that he might close the deal by delivering the same to Hatfield. It was Palm's stock, therefore, that plaintiff offered to sell and did sell to Hatfield. And it was Palm's stock Hatfield bought. That was the view plaintiff took of the matter when he insisted upon his regular broker's commission from Palm, the owner of the stock. How, then, can plaintiff be converted from a mere agent into a principal in one and the same transaction? Manifestly, plaintiff's claim of ownership rests, and must rest, entirely upon the fact that he advanced the purchase price of the stock, less his commission to Palm. In making that contention plaintiff ignores the fact that he did not purchase Palm's stock from him, but merely advanced to the latter the purchase price. In doing that plaintiff acted merely as a volunteer and not as a debtor. Up to that point he was not concerned in the transaction except as a broker or agent, and had no interest therein except what Palm owed him as a commission. He was not required to, nor did he, advance the money to Palm for his own protection, and there was no reason, legal or otherwise, why he should change his relation of broker or agent in the transaction. While it is true that the transaction in question was not one taking place on the floor of the Exchange yet, if it had, the principle governing agency would still control. As

is well said in *Kent* v. *De Coppet*, 149 App. Div. 589, 134 N. Y. Supp. 195, in the course of the opinion, in referring to this question in that case:

"* * * The relation of customer and broker in transactions upon the exchange is, in general, subject to the ordinary rules and principles of agency."

To the same effect is *Leo* v. *McCormack*, 186 N. Y. 335, 78 N. E. 1096, and cases there cited.

In *Richardson* v. *Shaw*, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981, the Supreme Court of the United States, in the course of the opinion, in referring to the relationship of a broker to an ordinary exchange transaction, says:

"The broker cannot be converted into an owner without a perversion of the understanding of the parties. * * * "

What the court there decides is that a broker, in making a sale of stock for a customer, cannot be converted into the owner of such stock without doing violence to the plain and unequivocal understanding of the broker and his customer. That is manifestly sound. The broker sells merely as the agent of his customer and not as the owner of the stock.

If plaintiff had been asked at the time when he offered the stock for sale whether he was selling as owner or as broker, he certainly would have been compelled to say that he was selling as broker. Moreover, if Palm had refused to pay plaintiff his commission upon the ground that the latter had sold his own stock, could Palm have substantiated his claim in any court? No one could successfully so contend. Again, if a creditor of Palm had attached the stock either before or after it was delivered to Hatfield, by what process of reasoning could plaintiff, or Hatfield, or Palm, have successfully contended in a court of justice that the ownership of the stock was in any one other than Palm? Let us apply still another test. Suppose plaintiff had stopped payment of his check and thus had revoked the order to pay Palm before the check was presented for payment; could Palm have recovered the amount thereof from plaintiff? Manifestly not. The plaintiff could have proven that the stock he sold for

Palm and which had been delivered to Hatfield had in fact been delivered by the latter to Palm, and hence Palm had received his stock back again, and therefore plaintiff's check was wholly without consideration. If that had occurred as a matter of course the plaintiff would have had no cause of action against the defendant nor as against Hatfield. In view, however, that plaintiff had advanced the price of the stock to Palm, he (Palm) was ahead the amount so advanced while being still in possession of all of his stock. The fact, therefore, that plaintiff had voluntarily advanced the amount for which he sold the stock to Palm could in no way affect the rights of the defendant. He may well say that the transaction negotiated by Palm was a mere sham, and that Palm had received the very stock he had delivered to plaintiff and which had been redelivered by Hatfield, and thus that there was no consideration whatever to support the transaction.

No doubt it sometimes happens that where the broker advances a part of the purchase price of stock which he has purchased for his customer that to the extent of such advance the broker becomes pledgee of the stock and may hold the same as security for such advancement. Under such circumstances, to be both broker and pledgee is, however, not inconsistent, but quite consistent. In making a sale of a customer's stock, however, the broker legally can act in one capacity only, that of an agent. In such a transaction he cannot at the same time be owner and broker, or principal and agent, for the reason that the two positions are entirely inconsistent in one and the same transaction. In this connection, we desire to state that we are not unmindful of the legal principle that counsel invoke, namely, that, whenever the purpose for which an agent has been appointed or an agency has been created is accomplished, the relationship of agent ceases. That doctrine is elementary, but we are not dealing with such a case here. Plaintiff was engaged to sell the stock as a broker or agent, and he sold the same as such broker and not as owner, and therefore, as against the defendant, could not change his

relationship to the transaction at will or when it became desirable for him to do so. For the purposes of the transaction, at least as between him and the defendant, the plaintiff can only assume the relationship of broker or agent.

It is needless to pursue the subject further. To our minds there is—there can be—but one conclusion, and that is that the plaintiff, for the reasons stated, cannot recover upon the first cause of action, and therefore the judgment of the district court as to that cause of action must prevail.

This brings us to the other two causes of action in which the defense of the statute of frauds is interposed.

This court is committed to the doctrine that the statute of frauds applies to transactions involving the purchase and sale of stocks. *Walker* v. *Bamberger,* 17 Utah, 239, 54 Pac. 108. That decision is supported by the weight of    3 authority. Among other numerous cases so holding, we refer to the following: *North* v. *Forrest,* 15 Conn. 400; *Tompkins* v. *Sheehan,* 158 N. Y. 617, 53 N. E. 502; *Sprague* v. *Hosie,* 155 Mich. 30, 118 N. W. 497, 19 L. R. A. (N. S.) 874, 130 Am. St. Rep. 558; *Ryers* v. *Tuska* (Com. Pl.) 14 N. Y. Supp. 926.

In view that there is no dispute respecting the fact that the transactions in the second and third causes of action rest entirely in parol without part acceptance of the stock or part payment of the purchase price, the conclusion follows that as to those two causes of action the statute of frauds may be set up as a defense, unless, as contended by plaintiff's counsel, the defendant had waived his right to interpose such defense. Counsel very earnestly insist that defendant had waived the right to set up the statute of frauds as a defense. The contention is based upon a certain by-law of the Exchange in which both plaintiff and defendant acted. The by-law relied on reads as follows:

"It is the duty of the seller of shares to deliver the same to the purchaser or such other broker as he may designate at his office.

"It shall be the duty of every seller of shares to compare the transactions of the day with the party to whom he has sold on

the same day as the transaction by signing a ticket with a full written description of the transaction.

"It shall be the duty of the buyer to investigate before 10 o'clock a. m. of the day after the purchase each transaction which has not been compared by the seller.

"No comparison or failure to compare and no notification or acceptance of notification, shall have the effect of creating or of canceling a contract, or of changing the parties to or the terms of a contract."

Here, again, were it not for the earnest contention of counsel, we should merely state our conclusion. In view, however, of counsel's vigorous argument that the foregoing by-law constitutes a waiver by all members of the Stock Exchange of the right to interpose the defense of the statute of frauds to stock transactions, we shall briefly state the reasons that prevent us from yielding assent to counsel's argument. The question therefore is: What constitutes a waiver under circumstances like those in the case at bar?

In Bowers, Law of Waiver, § 1, p. 19, the author defines "waiver" as follows:

"Waiver is the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit."

In *Schwab Safe & Lock Co.* v. *Snow,* 47 Utah, 199, 152 Pac. 171, we adopted the following definition from Words and Phrases, vol. 4, Second Edition, 1226, 1227:

"Waiver is the voluntary and intentional relinquishment of a known legal right and implies an election to dispense with something of value or forego some advantage which the party waiving might, at his option, have demanded or insisted upon."

The foregoing was reaffirmed by this court in *O'Donnell* v. *Parker,* 48 Utah, 578, 160 Pac. 1192. Although this court has at least twice defined waiver, neither side refers to the Utah cases, but refer to many cases, some of which, to say the least, are of doubtful value in a case like the one at bar. We refer to this fact, not in a spirit of unfriendly criticism, but merely to call counsel's attention to the fact that the omission on their part to refer to the decisions of this court occurs altogether too frequently to be passed without notice.

In view of the foregoing definitions of what constitutes waiver under circumstances like those involved here, did the defendant waive his right to interpose the statute of frauds as a defense? We have no hesitation in stating that we are very clearly of the opinion that he did not. Moreover, that such is not the effect of the by-law, nor was it intended to have such effect. It is true that a waiver, under certain circumstances, may be implied from other acts or conduct and may partake of the elements of an estoppel, as pointed out by this court in the case of *Loftis* v. *Insurance Co.*, 38 Utah, 532, 114 Pac. 134, and in 40 Cyc. pp. 267, 268. The waivers there referred to, however, ordinarily at least, arise out of concrete cases or under circumstances where a right exists in præsenti and not where, as here, it is contended that a right is waived in advance and that such waiver applies to all cases and under all circumstances. Where the question arises as it does here, it must be made to appear that the defendant waived the right either in express terms or by showing such facts and circumstances from which the intention to waive may be clearly inferred or implied. Such is not the case here. The district court was therefore clearly right in holding that the defendant did not waive the right to interpose the statute of frauds as a defense or as a bar to the last two causes of action.

Much time and space is also devoted by both sides to the question of whether the right to interpose the statute of frauds as a defense may be waived before a case in which it could be interposed as a defense has arisen and whether a general waiver would not be against public policy. Here again, in view that we have held that the defendant did not waive the right, it becomes immaterial whether at all events he could have waived it in advance of any action or potential or contemplated action against him, and hence we express no opinion upon that question.

For the reasons stated the judgment should be, and it accordingly is, affirmed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.