## SCHWAB SAFE & LOCK CO. v. SNOW.

No. 2798.   Decided Sept. 16, 1915.   On application for rehearing,
October 20, 1915 (152 Pac. 171).

1. CONTRACTS—CANCELLATION—EFFECT.   Where defendant's contract to purchase a safe from plaintiff was canceled by mutual consent, no effect can be given to previous letters between the parties concerning the transaction.   (Page 202.)

2. SALES—CANCELLATION—MUTUAL CONSENT.   Where, by a contract between plaintiff and defendant, defendant bought safes from plaintiff which plaintiff shipped to purchasers from defendant, a letter from defendant to plaintiff with reference to an undelivered order, which said: "We feel very much grieved in having to request you to cancel the order," * * * to which plaintiff answered by letter, saying, "We are also grieved that it is necessary to cancel" the order, constituted an unconditional cancellation of the order by mutual consent.   (Page 202.)

3. SALES—CANCELLATION—NOTIFICATION—EFFECT.   Where, by reason of plaintiff's delay in shipping safes, the purchasers canceled their contracts with defendant, letters by defendant notifying plaintiff thereof and advising it not to ship the safes in question did not constitute a cancellation of such orders relieving plaintiff from liability for breach of its contract.   (Page 203.)

4. SALES—SPECIFICATIONS—SUBSEQUENT CHANGE—EFFECT..   Where plaintiff accepted generally an order for several safes, and, when notified by defendant later of a special cabinet required for one of the safes, wrote defendant that such order could not be filed because plaintiff could not supply such safe with the special cabinet, there was no contract for the purchase of the special safe between plaintiff and defendant, for want of a meeting of the minds.   (Page 204.)

5. APPEAL AND ERROR—FINDING—SUBSTANTIAL EVIDENCE—EFFECT.   Where a finding of the court is supported by some substantial evidence, it will not be disturbed on appeal.   (Page 205.)

6. SALES—SELLER'S BREACH OF CONTRACT—MEASURE OF DAMAGES—RESALE AT PROFIT.   Where plaintiff failed to deliver certain safes to persons who had purchased them from defendant, defendant's measure of damages was his prospective profit on the resale.   (Page 205.)

7. SALES—INTEREST.   It appearing that defendant's customers were to pay for safes in monthly installments without interest, inter-

est allowed to defendant under a counterclaim for the loss of sundry sales by reason of plaintiff's delay in filling defendant's accepted orders should commence with the date on which the last payment for the purchasers to defendant would have fallen due in each instance. (Page 208.)

On Application for Rehearing.

8. WORDS AND PHRASES—"WAIVER." A "waiver" is the intentional abandonment of a known right which may or may not rest in contract, and, if it does, requires a consideration. (Page 210.)

9. COSTS—DISCRETION OF COURT. Except where a judgment of the lower court is unconditionally affirmed, the apportionment of costs on appeal rests in the sound discretion of the court. (Page 213.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by Schwab Safe & Lock Company against O. G. Snow.

Judgment for defendant on his counterclaim. Plaintiff appeals.

AFFIRMED CONDITIONALLY.

*R. B. Porter,* for appellant.

*W. R. Hutchinson,* for respondent.

FRICK, J.

The plaintiff sued the defendant to recover an alleged balance due "for goods, wares and merchandise sold and delivered" to him. The case was here before on the defendant's appeal. The dismissal of his counterclaim was held erroneous, and the case was remanded for a new trial. *Schwab Safe & Lock Co.* v. *Snow,* 44 Utah 341, 140 Pac. 761. A new trial was accordingly had to the court without a jury, and the court entered judgment for the plaintiff on the balance agreed to be due it, and also made findings of fact and conclusions of law in favor of the defendant on his several counterclaims and entered judgment in his favor for the difference between the amount allowed plaintiff on its claim

and the amount found due on the defendant's counterclaims. This time the plaintiff appeals.

The case was practically tried and submitted on the evidence introduced on the first trial, nearly all of which is in the form of letters passing between the parties. The printed abstract used on the former appeal is filed as the abstract on this one, with a few material yet what may be called merely formal, additions. The facts are sufficiently set forth in the opinion on the former appeal, and we shall not pause to repeat them here.

After carefully considering the relationship of the parties and the correspondence passing between them, it was on the former appeal held that the evidence was sufficient to authorize a finding in favor of the defendant on his counterclaims. Mr. Justice Straup, after considering the evidence, in speaking for the court, said:

"Under the circumstances disclosed and the shown relation between the parties, the defendant's sending in the orders and the plaintiff's acknowledging receipt of them, stating they had been entered, would receive prompt attention, and that shipments would be made as soon as possible, sufficiently shows an acceptance."

What was there said by Mr. Justice Straup was, however, intended as applying to the counterclaims as a whole, and not to any particular one. Nor was it intended to foreclose the plaintiff from interposing any defense, in part or in whole, that it might have. All that was intended is clearly expressed in the quotation, namely, that the orders and acceptances *prima facie* were sufficient to constitute contracts of purchases and sales. Upon that particular subject there is practically nothing new in the evidence, with possibly one or two exceptions, to which we shall specifically refer hereafter. The court made separate and specific findings upon all the defendant's counterclaims, eight in number, and plaintiff's counsel assails those findings as not supported by the evidence.

The court found that there was due from the plaintiff to the defendant as damages on the eighth counterclaim the sum of $294.68, for failure to deliver a certain No. 160 safe which the defendant had ordered on the 28th day of

November, 1906, for one W. H. Bishop, and which   **1, 2**
order the court found the plaintiff had duly accepted
on the 4th day of December following. The evidence justified
the finding that the safe in question was ordered by the
defendant, and that the order was duly accepted by the
plaintiff. The matter, however, did not end there. On May
8, 1907, the defendant wrote the plaintiff respecting the or-
der now under consideration as follows:

"We feel very much grieved in having to request you to
cancel the order of W. H. Bishop for a No. 160 which you
have had since November, 1906."

In response to that request the plaintiff replied:

"We are also grieved that it is necessary to cancel the
Bishop No. 160 safe, but it was impossible for us to fill the
order any sooner."

Defendant's counsel, however, calls attention to some let-
ters that passed between the plaintiff and the defendant
concerning the Bishop sale. These letters, however, all ante-
date the cancellation and acceptance of the Bishop order,
and therefore can be given no effect in so far as the cancella-
tion of that order is concerned. The defendant, no doubt, had
a right to propose the cancellation of any order that had been
accepted by the plaintiff, and the plaintiff had a clear legal
right to accept his proposal. After the proposal to cancel
any standing order was accepted, that terminated the con-
tract respecting the order thus canceled, and we cannot see
how the same could be reinstated, except by a new agree-
ment between the parties. To be more specific: The order by
the defendant and the acceptance thereof by the plaintiff, as
a matter of course, constituted a contract binding upon both
parties. The defendant, however, proposed an unconditional
cancellation of the order, and the plaintiff accepted the prop-
osition. This, in law, constituted a rescission or cancellation,
whatever it may be called, of an executory contract by mu-
tual consent, and in view that the contract was executory
the acceptance by plaintiff of defendant's proposal to can-
cel or rescind the order was a sufficient consideration to sup-
port such rescission or cancellation. 1 Page on Contracts,
Section 317. In view, therefore, that the defendant uncon-

ditionally canceled the order and the plaintiff unconditionally joined in the proposed cancellation, it inevitably follows that the contract which arose by reason of the accepted order ceased to exist. In view that the contract was executory, if it was canceled or rescinded as to one party, it of necessity must also have ceased to exist as to the other. To illustrate: Suppose the plaintiff had sued the defendant for a breach of the contract after it had accepted his proposition to cancel the order; could it maintain an action for breach of contract? The question answers itself. If, therefore, the contract is canceled so that one of the parties may not sustain an action for its breach, it must likewise be so as to the other, unless there is a reservation of some kind by one of the parties. In view of the unconditional cancellation of the order for the Bishop safe by the defendant and its unconditional acceptance by the plaintiff, we think the defendant cannot recover damages as for a breach of the contract which arose from the acceptance of the canceled order.

We remark that plaintiff's counsel, with much vigor, insists that nearly all, if not all, of the other orders, were also canceled by the defendant. The evidence does not justify such a conclusion. When the defendant's customers had refused to wait longer for the safes which they **3** had ordered from him, all that he, in effect, did was to notify the plaintiff of that fact, and in connection therewith advised it not to ship any of the safes thereafter. This did not amount to a cancellation of the orders, as in the Bishop case. The defendant had the right at any time, for any reason or for no reason, to cancel a particular order, and if the plaintiff joined in the proposal for cancellation, that ended the contract. But when the plaintiff delayed in filling the orders until the defendant's customers refused to accept the safes ordered, and all that the defendant did was to apprise the plaintiff of that fact, such conduct on his part did not amount to an unconditional cancellation of the orders and was not intended as such. There is no evidence in the record which would justify a finding that the defendant had canceled any order except the one for the so-called Bishop safe.

By what we have said we do not wish to be understood as

holding that, even though an order,. after its acceptance, be mutually canceled, there may not be some remedy. for a party who may have parted with some consideration or who has done something in reliance on the contract before its cancellation. Whatever the remedy may be, if any, in such a case, however, it is quite clear that it is not for damages for breach of the contract, since the defendant cannot now insist upon a breach which he had waived by his unconditional cancellation of the contract.

We are clearly of the opinion, therefore, that there. is no evidence to sustain the finding respecting the eighth counterclaim. Plaintiff's counsel also insists that the same result should follow respecting the first counterclaim. Three safes were covered in the first counterclaim, including      **4** one ordered for one W. H. Davis. The court allowed the defendant damages for the failure to deliver the Davis safe in the sum of $177.33, with interest thereon amounting to $102.62, or a total of principal and interest of $279.95. On June 24, 1908, the defendant wrote the plaintiff regarding the Davis safe. He wrote that a safe "with special cabinet should be shipped to W. H. Davis" right away. Plaintiff acknowledged receipt of that letter on June 29, 1908, and in reply stated:

"In regard to the 80 safe for W. H. Davis, Mina, Nevada, which takes a special cabinet, desire to say that we cannot furnish you this safe with the special cabinet. We are herewith returning you diagram of the special cabinet.  *  *  * We can fill an order for our regular safe within a week, and if this safe is satisfactory to Mr. Davis please let us know by return mail and we will make prompt shipment."

It appears that Mr. Davis did not want the "regular safe," and hence the order never was filled. As near as we can make out, the court found against the plaintiff upon this counterclaim for the sole reason that there were two other safes included with the Davis order, and the order was by the plaintiff accepted in general terms. When plaintiff was advised, however, that the Davis safe was to be provided with a "special cabinet," it at once informed the defendant that "we cannot furnish you this safe." The truth of the matter there-

fore is that the minds of the parties never met on the Davis safe order, and hence there was no binding contract with respect thereto. This feature differentiates the order for the Davis safe from all other orders. We are of the opinion, therefore, that plaintiff's assignment should prevail with regard to that counterclaim.

There is still another assignment which relates to a safe ordered by defendant for one J. C. Fuller, for which, plaintiff's counsel contends, no acceptance was shown. While the evidence as to that counterclaim is not as strong as it might be, yet there is some substantial evidence in support of the court's finding. The case being a law case, we cannot interfere so long as there is some substantial evidence in support of the findings which are assailed.

The evidence upon the remaining five counterclaims is ample to sustain the findings in favor of those counterclaims.

Nor is the evidence sufficient to sustain plaintiff's contention that the defendant had waived his right to recover damages for plaintiff's breaches of the several contracts, except for the Bishop case, by failing to deliver the safes and which orders it had fully accepted.

Plaintiff's counsel next assails the amount of damages allowed by the court. The court entered judgment for the defendant for the full amount for which he had sold the safes, less the cost price and freight. Thus the court treated the transactions as though all of the safes ordered by the defendant, which orders were accepted by the plaintiff, had been promptly shipped by it to the persons to whom the defendant had sold them, and as though those persons had paid the defendant the selling price, deducting only therefrom the cost price and the freight from the place of shipment to the place of delivery; in other words, the court allowed the defendant all the profits he would have made upon his contracts of sales. Plaintiff's counsel contends that this is not the usual or ordinary measure of damages for a breach of a contract for failure to deliver articles of merchandise which have been sold. In ordinary cases such is not the measure of damages. The usual rule is that in such cases the injured party must obtain the article in the market if he can do so, and his meas-

ure of damages is the difference between the price he agreed to pay for the article and the market value or market price there of. This rule in cases where the article can be obtained in the general market is fair and just to all concerned. When a purchaser can obtain the article in the open market (and if he can he must do so), he, ordinarily at least, cannot recover any profit he would have made upon a resale of the article purchased by him. There are exceptions to this rule, however. There are instances where the article purchased is not delivered by the vendor and cannot be obtained in the market, but it has nevertheless been resold to a third person in reliance on the contract of purchase, and the vendor was informed of such resale and the price thereof. Under such circumstances it is held that the purchaser may recover the profits of the resale from the vendor as damages. The rule of damages applicable in such cases is learnedly discussed by Mr. Justice Marshall of the Supreme Court of Wisconsin in *Guetzkow Bros. Co.* v. *A. H. Andrews & Co.*, 92 Wis. 223, 224, 66 N. W. 122, 52 L. R. A. 209, 53 Am. St. Rep. 909. The justice, after a lengthy discussion and review of some of the American as well as some of the English cases, lays down the following rule:

"When the vendor is informed that the purchase is made to enable the vendee to fulfill a contract which he has theretofore made with a third person, and such vendor furnishes the goods, but not according to contract, and there is no market price for such goods, and the purchaser furnishes such goods to such third person, but is not able to recover of him the price stipulated in the contract with such third person, by reason of the breach of the contract committed by such vendor, in determining the damages for such breach such vendor is bound by the price his vendee was to receive from such third person, whether such price was communicated to him at the time of the making of the contract with his vendee or not, unless the price was such as to yield an extraordinary and unusual profit, which could not reasonably have been presumed to have been in contemplation by him at the time he made his contract. In such a case he would not be bound beyond such sum as would yield a reasonable and fair profit to his vendee. Ordinarily, the price to the first vendee would, presumptively, be held to be a reasonable price; but if the facts in any given case are such as to show such price to yield an extravagant or extraordinary profit, the second vendor will not be bound by such price, in the absence of evidence of previous knowledge, as before stated;

and, in order to assess the damages, the court must be put in possession of sufficient evidence to enable it to arrive at a conclusion in respect to what would amount to a reasonable profit on the transaction."

The rule is not so guardedly stated by all the courts. In *McKay* v. *Riley*, 65 Cal. 623, 4 Pac. 667, the rule is stated thus:

"Ordinarily, the rule of damages in actions like the present is the difference between the price agreed to be paid and the market value, because the vendee can obtain the article contracted for at the market price. When, however, the circumstances are such that the vendee cannot thus supply himself, the rule does not apply, for the reason of it ceases. *Bank* v. *Reese*, 2 Casey (26 Pa.) 143. In such case the true measure of damages is the actual loss sustained by the vendee by reason of his not receiving an advance of profit through agreements which he himself has made in reliance upon the fulfillment of his vendor's contract."

To the same effect are *Rose* v. *Foord*, 96 Cal. 154, 30 Pac. 1114; *McHose* v. *Fulmer*, 73 Pac. 365. The rule is also discussed by the author in 3 Sutherland on Damages (3d Ed.), Sections 652, 653.

In the case at bar the defendant alleged in his counterclaims that he had informed the plaintiff in each case of the price for which he had sold the particular safe and to whom sold and the place of delivery, and that the plaintiff had accepted the defendant's orders in the light of that information. The court also found these allegations to be true, and further found that the defendant could not obtain other safes in the market, and there is evidence in support of the findings. We are of the opinion, therefore, that the case falls squarely within the rule laid down by the Supreme Court of Wisconsin, which, in our judgment, is sufficiently guarded to prevent injustice in particular cases. We can see no escape from the conclusion that, under the evidence and findings when applied to the law, the defendant is entitled to recover the profits allowed by the trial court, except on the Bishop and Davis orders. On the Bishop order there must be a conditional deduction of $294.68, and on the Davis order one for $279.95, or a total deduction of $574.63.

Plaintiff's counsel also insists that the court erred in its

allowance of interest. The court upon each order allowed interest at the statutory rate, dating the allowance in each case two months after the acceptance of each order. An examination of the orders discloses that they also constituted the contracts of sales made by the defendant with his customers. In most every instance the purchase price agreed upon was made payable in installments so that the payments extended over a period of six months, and in some instances perhaps more. No interest is mentioned in those orders or contracts, and in view of the theory followed by the court in allowing the defendant damages, that theory being as though his contracts with his customers had been fully performed, we cannot see how it can logically be contended that the plaintiff should pay interest on money until it was due to payable to the defendant from his customers. If the defendant is to be treated as though the orders had been filed by the plaintiff, why should he have interest from the plaintiff when he would have received none from his customers? We think the court allowed too much interest, that is, for too long a period, upon nearly all of the counterclaims. We shall not pause here, however, to determine the precise amount that should be allowed on each counterclaim. That is what the attorneys can do when a rule for their guidance is given. We think that no interest should be allowed on any of the counterclaims until the last payment became due and payable under the orders taken by the defendant from his customers, and which he, in effect, forwarded to the plaintiff, and upon which it acted. In view that nothing is said about interest in the orders or contracts between the defendant and his customers, and in view of the large profits, in every instance more than 100 per cent., and in some as high as 150 per cent., the defendant contracted for, it may well be assumed that the interest was provided for in the enhanced contract price. We think that under the rule for the allowance of interest in this jurisdiction, and under the circumstances of this case, it is only fair that interest should be allowed the defendant only from the date that the last payment on his contracts with his customers fell due.

In view that this is a law case, we cannot dispose of it, ex-

cept conditionally. In case, therefore, that the defendant shall consent to remit from the judgment the sum of $574.63 on the two counterclaims we have mentioned, and shall further consent that the interest on the remaining six counterclaims shall be computed from the dates herein suggested and shall remit from the interest allowed in the judgment such excess, if any, and shall file his consent to such remittitur within twenty days after the filing of this opinion, then the judgment as modified shall stand affirmed; but in case the defendant shall refuse to so remit, then the judgment shall stand reversed, and the case shall be remanded to the District Court, with directions to grant a new trial. In case the defendant accepts the conditions hereby imposed, each party shall pay his own costs; but in case he elects to stand upon a reversal of the judgment, then the appellant shall recover costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.

On Application for Rehearing.

FRICK, J.

Counsel for appellant has filed a petition for rehearing in which he assails practically every proposition decided against his contentions. He somewhat severely criticises us for not stating our reasons more at large upon some of the propositions where the ruling is against him. As a sample of his criticism we refer to the following: Counsel, in his original brief, urged that the defendant had waived his right to recover damages for the reason, as counsel contends, that defendant had continued to recognize the contracts of sale as being in force after the alleged breaches had occurred. To sustain that contention, counsel, among other cases, cited *Phillips, etc., Co.* v. *Seymour*, 91 U. S. 646, 23 L. Ed. 341; *Dingley* v. *Oler*, 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984; *Hubbardston Lumber Co.* v. *Bates*, 31 Mich. 158; *Krause* v. *Board of Trustees* (Ind. App.), 66 N. E. 1010, and *Claudius* v. *West, etc., Co.*, 109 Mo. App. 346, 84 S. W. 354. Counsel says we cited no cases to the contrary, and that we, in four lines, dismissed his contention, etc. So we did, and the rea-

son therefor was that, after reading the foregoing cases and some other cited in support of the proposition, we became convinced that the cases cited had no application to the facts of the case at bar. We are still of that opinion. The case cited from 91 U. S., *supra,* involved a forfeiture arising as follows: The defendants in error had agreed to construct and complete a certain number of miles of railroad within a specified time. They failed to complete the work within the time agreed upon, but the plaintiff in error permitted the defendants in error to continue the work after the time within which it should have been completed had elapsed. The plaintiff in error thereafter failed to pay the defendants in error for all of the work, and they sued the former to recover for the unpaid portion. The plaintiff in error in that action sought to enforce the forfeiture which was provided for in case the defendants in error should fail to complete the railroad within the specified time, and the Supreme Court of the United States, upon very familiar principles, refused to enforce the forfeiture. The principle that controlled the decision in the case of *Claudius* v. *West, etc., Co., supra,* is so clearly reflected in the headnote that we shall do no more than to copy the same. It reads:

"Where the time of payment under a contract is extended after date for payment, the right of enforcing a forfeiture for default in payment is waived."

The decisions in the other cases cited rest upon practically the same principle.

The substance of the correspondence between the parties to this action is set forth in the former opinion, to which reference is made in the opinion on this appeal. The peculiar relationship of the parties is there fully referred to. It was not deemed necessary to enlarge upon or even to specifically refer again to that relationship in the last opinion.

Counsel, however, somewhat impatiently contends that we treated the question of whether there was a waiver or not as one of evidence or of fact when it is not such. The difference between us and counsel, however, is one merely of stating the proposition. No doubt "waiver" is a legal conclusion based upon the evidence or the facts, just as

one chooses to state it. What the conclusion should be in a
given case depends entirely upon the evidence or the facts
found. There is, therefore, no reason why we should change
the statement in the opinion upon that subject. But what is
a "waiver"? It is defined as being the

"voluntary and intentional relinquishment of a known legal right
and implies an election to dispense with something of value or fore-
go some advantage which the party waiving it might, at his option,
have demanded or insisted upon." 4 Words and Phrases (2d Ser.)
1226, 1227.

A waiver may or may not rest in contract. If it does, it,
like all other contracts, requires some consideration. It may,
however, also partake of the nature of an estoppel *in pais.*
4 Words and Phrases, *supra.* A mere cursory reading of the
correspondence between the parties to this action which
passed between them, in connection with other evidence in the
case, leaves no room for doubt that the defendant did not
intend to, nor did he, waive any legal rights which had ac-
crued to him by reason of the breaches of the contracts set
forth in his counterclaims. The cases cited by counsel, there-
fore, have no influence upon the questions involved here. Or-
dinarily, where the right to insist upon a forfeiture exists,
and the party who has the right to declare a forfeiture per-
mits the other party to continue to act or to do something
after the time to declare the forfeiture has elapsed, and the
other party continues to act in the honest belief that the for-
feiture will not be insisted upon, then a waiver of such for-
feiture may be implied, and the law looks upon such waivers
with favor. Where, however, a legal right or cause of action
has accrued for a breach of contract or for some other reason,
the law requires that the waiver be established in accordance
with the doctrine we have just quoted from Words and
Phrases.

Counsel also insists that we erred in not reversing the
judgment on the counterclaim relating to what, in the opin-
ion, is called the J. C. Fuller safe. He still contends that
there is no evidence justifying the court's finding as to that
counterclaim, and further insists that the Fuller safe was
delivered. There is evidence on the part of the plaintiff that

the safe was shipped pursuant to the order, but there is also undisputed evidence on the part of the defendant that supports the court's findings. The defendant upon that question testified:

"Why, it was shipped to Ely, but it was about eight months after the order was sent to the company [the plaintiff], and in the meantime Fuller had left that country and I could never deliver the safe."

This is a law case, and we cannot pass upon the weight or effect of the evidence. While the writer, upon the whole evidence, would be inclined to find the ultimate fact respecting that safe in favor of plaintiff's claim, yet there is some substantial evidence in support of the court's findings, and hence we cannot interfere with the judgment upon that counterclaim. The other question of whether the plaintiff had accepted the order for the J. C. Fuller safe we need not discuss further. We passed upon that in the original opinion, and adhere to what is there said in that respect.

It is next insisted that we erred in not reversing the judgment upon the measure of damages. It is urged that inasmuch as it is made to appear that the defendant sold the safes in question at an advance of more than 100 per cent., that, therefore, we have not followed the rule laid down in the Wisconsin case from which we quoted in the opinion. Here again counsel entirely overlooks the evidence. While it is true that the defendant sold the safes at the price stated in the former opinion, yet the evidence conclusively shows that his expenses of keeping men in the field taking orders for safes were very great, and that he frequently impressed that fact upon the plaintiff in the correspondence that passed between them. What his net profits were is not shown, and hence the doctrine laid down by the Wisconsin court could be given no application. We did not deem it necessary to set forth the evidence upon that subject or refer to it, since counsel was thoroughly familiar with it. In view that we are satisfied with the rule laid down in the opinion upon the question of the measure of damages we shall not further discuss that subject here.

It is also insisted that we abused our discretion in disallow-

ing plaintiff costs on appeal. The propensity to criticise what one does not like is ever active, and counsel at times criticise a ruling without pausing to consider the reason upon which it is based. That, in our judgment, is what counsel has done in regard to the order for costs. The allowance for costs in this court is always a matter of sound discretion, except where the judgment of the lower court is unconditionally affirmed. In all other cases costs are to be awarded or withheld as, in our judgment, justice may require. While it is true, as counsel states, that plaintiff was required to come to this court to obtain a reversal or modification of the judgment appealed from, yet it is. equally true that the plaintiff sued the defendant when, under our statute (Comp. Laws 1907, Section 2971), it had no right to any kind of a judgment against him. The defendant was therefore required to defend himself against the plaintiff's action, which was prosecuted without legal cause. The plaintiff, therefore, was not entitled to any judgment against the defendant. Under such circumstances we do not see why, as a matter of justice, the defendant should be required to pay costs. True, on the former appeal defendant was awarded costs. That was so, however, because the plaintiff had obtained an erroneous ruling to the effect that the defendant had no cause of action upon his counterclaims. Moreover, on this appeal the plaintiff did not print a new abstract of the record, but merely filed the one used on the former appeal, with a few unimportant additions thereto in what is called an additional abstract. Why the defendant should be required to pay for the abstract used on the former appeal is not shown. Although the plaintiff had to come to this court to have the judgment against it modified, yet it was required to do that because it had instituted the action without any legal cause therefor. Under such circumstances we think the order respecting costs is sound in reason, and is also just to both parties, and the same should stand except as hereinafter indicated.

Counsel for plaintiff, however, further contends that we erred in not reversing the findings and judgment of the lower court respecting defendant's third counterclaim, in which

he was awarded the sum of $240.24, including interest. Counsel strenuously insists that there is no evidence that the order for the No. 80 safe mentioned in that counterclaim was accepted by the plaintiff, and hence the lower court, as well as this court, has erred in allowing the amount, or any amount, claimed by the defendant in said counterclaim. In view of counsel's insistence, we have made a very careful re-examination of the evidence adduced on the first trial, all of which was made a part of the record on the second trial, and have also re-examined the evidence adduced on the second trial, and after doing so have become convinced that the evidence pointed out by defendant's counsel and relied on by us as constituting an acceptance of the order for the No. 80 safe mentioned in the third counterclaim in fact had reference to another No. 80 safe that was ordered by the defendant for another and a different person. In view of the foregoing there is no evidence whatever which justifies a finding that the plaintiff had accepted the order for the No. 80 safe mentioned in the third counterclaim. The finding and judgment respecting that counterclaim, therefore, cannot be maintained, for the simple reason that there is no evidence of any contract between the parties respecting the No. 80 safe mentioned in said counterclaim. The amount awarded the defendant by the trial court on that counterclaim in the sum of $240.24 as aforesaid must, therefore, be deducted from the original judgment. The judgment as modified by the original opinion in this case must therefore be further modified by deducting from the amount there allowed said sum of $240.24. It is therefore ordered that the judgment as modified by the original opinion be, and the same hereby is, further modified by deducting from the amount there allowed the further sum of $240.24, and the judgment, when so modified, will in all other respects stand affirmed. Said affirmance is upon the condition, however that the defendant, within five days after the filing of this opinion and notice thereof to his counsel, shall file his consent to the foregoing modification of the judgment. In case he shall refuse or neglect to file said consent within the time stated, then the judgment as to said third counterclaim shall be, and the same is hereby, reversed, and

in view that the defendant had already accepted the judgment as modified by the original opinion, the case will be remanded to the District Court of Salt Lake County for a retrial only upon said third counterclaim and upon no other matter or thing, and said judgment will stand affirmed as to all other counterclaims, except as modified by the original opinion. In case the defendant shall fail or refuse to file an acceptance of the further modification of the judgment as herein provided for, and shall insist upon a retrial of the case upon said third counterclaim, he shall pay the costs for printing the additional abstract, and also for printing plaintiff's brief. In case he accepts the modification of the judgment, however, he shall not be required to pay said costs.

STRAUP, C. J., and McCARTY, J., concur.