## ANGLO-CALIFORNIA TRUST CO. v. HALL.

No. 3876.   Decided December 30, 1922.   (211 Pac. 991.)

1. CONTRACTS—STIPULATION GRANTING IMMUNITY TO FRAUD AND INIQUITY WITHOUT EFFECT. The law will not give effect to a stipulation intended to grant immunity to fraud and iniquity.

2. CONTRACTS—UNTRUE REPRESENTATION DOES NOT IPSO FACTO CONSTITUTE FRAUD. An untrue or false representation does not ipso facto constitute fraud, unless made with knowledge of its falsity, or recklessly and without belief in its truth, nor is a naked misrepresentation fraudulent in law, except for the purpose of rescission, where parties are placed in statu quo.

3. SALES—ALLEGATION OF FALSE REPRESENTATION AND WARRANTY HELD NOT ALLEGATION OF "FRAUD;" "BREACH OF WARRANTY." An allegation that a motor company "falsely represented and warranted" that a tractor would pull plows sold with it in usual and ordinary plowing at a depth of 10 inches *held* not a charge of fraud, but rather a breach of warranty, as defined by Comp. Laws 1917, § 5121; "fraud" being distinguished from "breach of warranty," in that it involves guilty knowledge not present in mere breach of warranty.

4. SALES—WARRANTY IN CONTRACT TO PURCHASE TRACTOR HELD WAIVED. Under Comp. Laws 1917, §§ 6496, 6578, regulating the assignment of a thing in action and cross-demands, in the absence of fraud or duress, it is not against public policy for the purchaser to waive a warranty, and thus estop himself from complaining of a breach thereof; and a contract for the purchase of a tractor and plows, providing that in the event of its assignment the purchaser shall be precluded from in any manner attacking its validity, and providing that the money thereunder payable "shall be paid to such assignee or holder without recoupment, set-off, or counterclaim of any sort whatever," *held* a valid "waiver". (citing Words and Phrases, Second Series, "Waiver").[1]

[1] *O'Donnell* v. *Parker*, 48 Utah, 578, 160 Pac. 1192; *Schwab Safe & Lock Co.* v. *Snow*, 47 Utah, 199, 152 Pac. 171.

5. CORPORATIONS—ACCEPTING ASSIGNMENT OF OBLIGATION AGAINST
   CITIZEN OF STATE NOT "DOING BUSINESS" WITHIN STATE. Ac-
   cepting an assignment of an obligation against a citizen of the
   state by foreign corporation is not doing business within the
   contemplation of the law.[2]

Appeal from District Court, First District, Box Elder
County; *M. C. Harris,* Judge.

Action by the Anglo-California Trust Company against
C. W. Hall. From a judgment for plaintiff, defendant ap-
peals.

AFFIRMED.

*Halverson & Pratt,* of Ogden, for appellant.

*Le Roy B. Young,* of Brigham City, for respondent.

WEBER, J.

This is a suit upon a contract entered into between the
Ritchie Motor Company, plaintiff's assignor, and C. W.
Hall, who appeals from a judgment in favor of plaintiff.

For the purposes of this opinion, both the pleadings and
the evidence are sufficiently reflected by the findings of fact
made by the court, before whom the case was tried with-
out a jury. The findings of fact are in substance as follows:

(1) "That the plaintiff is a corporation organized and existing
pursuant to the laws of the state of California."

(2) "That on or about the 23d day of May, 1920, at Tremonton,
Box Elder county, Utah, the defendant entered into a certain con-
ditional sales contract with the Ritchie Motor Company, of Tre-
monton, Utah, wherein and whereby the said defendant promised
and agreed to purchase from the said Ritchie Motor Company one
Fordson tractor, 1920 model, motor No. 115732, and one No. 42
disc plow for the sum of $1,195, $400 of which was paid at the time
of the execution of said agreement and the balance of $795 was to

---

[2] *General Motors Acceptance Corp.* v. *Lund,* 60 Utah, 247, 208 P.
502.

be paid six months thereafter; said agreement further provided that all deferred payments should draw interest at the rate of 8 per cent. per annum until due and 12 per cent. per annum thereafter until paid, a copy of which said written agreement is annexed to defendant's answer and made a part thereof and is also attached to these findings" and made part thereof.

Finding No. 3 relates to attorney's fees provided for in the contract.

Finding No. 4 relates to the assignment of the contract to and that the plaintiff is the owner and holder thereof.

In finding No. 5, the court finds that there is due, principal and interest, under the contract, $871.85, together with $100 attorney's fees.

In finding No. 8 the court finds that plaintiff, a corporation of California, was not at any time legally licensed to do business under the laws of the state of Utah, but that defendant had abandoned such defense at the trial.

(9) "That the court further finds that on the 23d day of May, 1920, the Ritchie Motor Company, a copartnership, consisting of George Ritchie, Harry Taylor, Ralph J. Stayner, and C. R. Steffen, doing business at Tremonton, Utah, agreed to transfer, sell, and deliver to defendant the said Fordson tractor and disc plow according to the terms of said agreement, * * * and that in pursuance of said agreement the defendant paid to Ritchie Motor Company the sum of $400, upon the execution of said contract and thereupon the said Ritchie Motor Company delivered said tractor and plow to defendant. That at the time of entering into said contract the said Ritchie Motor Company represented and warranted to defendant that the tractor would pull the plows sold in usual and ordinary plowing at a depth of 10 inches in the soil, and that this defendant, believing in and relying wholly upon said representations and warranties so made, entered into the agreement aforesaid. That said tractor would not pull the plows sold in usual and ordinary plowing at a depth of ten inches in the soil so represented and warranted by the said Ritchie Motor Company and as soon as defendant discovered that fact he notified the Ritchie Motor Company, who attempted to make the same work, but that it failed to perform the work for which it was made."

(10) "That shortly after this plaintiff purchased said contract it notified defendant in writing that it was the owner of said contract, together with all rights covered by the same, and the owner of the property represented thereby, and that thereafter, to wit, in August, 1920, this defendant paid to plaintiff the sum of $9 as interest to apply on the said indebtedness, and at the same time made no complaints to this plaintiff about said tractor. That thereafter, to wit, about the month of September, 1920, the defendant offered

back said tractor and plows to the said Ritchie Motor Company, but never made any tender of said tractor or plow to this plaintiff until the conclusion of this trial, at which time the defendant in open court tendered back said tractor and plow to this plaintiff and also amended his answer as follows: 'That defendant hereby tenders back to plaintiff in open court the said tractor and plows.' The court further finds that during the season of 1920 and before tendering back said property to the Ritchie Motor Company the defendant plowed approximately 75 acres of land with said tractor and plows."

(11)   "The court finds further that the plaintiff and the Ritchie Motor Company had no arrangements between each other by which the said Ritchie Motor Company should sell goods, wares, and merchandise, nor that before the agreement should be made that there was any agreement that they would take such contracts off the hands of said Ritchie Motor Company and thereby attempt to defeat any defense against the Ritchie Motor Company for a failure to perform its agreements, nor does the court find that this action is brought and prosecuted for the benefit of said Ritchie Motor Company, and with knowledge and notice of the defendant's defense, as is alleged in defendant's answer, but, on the contrary, the court finds that there was no collusion nor arrangements between the Ritchie Motor Company and this plaintiff whatsoever, save and except that this plaintiff purchased from the Ritchie Motor Company such contracts as were offered by said company for sale upon satisfactory proof to this plaintiff that the parties were solvent and that said contracts would be paid when due."

The court further found that by paragraph 8 of the contract the defendant was estopped from setting up the defense of breach of warranty. Paragraph 8 of the contract provides:

"It is agreed that in the event the seller shall assign and transfer this agreement and his rights and the moneys payable hereunder to a third party, then the purchaser shall be precluded from in any manner attacking the validity of this agreement on the ground of fraud, duress, mistake, want of consideration, or failure of consideration, or upon any other ground, and the moneys payable hereunder by the purchaser shall be paid to such assignee or holder without recoupment, set-off, or counterclaim of any sort whatsoever. It is understood and agreed that, should said seller assign this contract, and said purchaser be or become in default in the performance of any of the obligations, in which event said seller shall be subrogated in the place and stead of the said assignee as to all amounts so paid, subject to the prior payment of all sums due assignee hereunder."

Appellant contends that the above paragraph, upon which respondent relies as precluding the defense interposed by defendant, is void and contrary to public policy. The law will not give effect to a stipulation intended to grant immunity to fraud and iniquity. ''When the execution of a contract is produced by fraud, a party is not bound by any claim therein precluding him from setting up false and fraudulent representations within a proper time.'' 18 C. J. 394. In the answer, it is averred:

"That at the time of entering into said contract the said Ritchie Motor Company falsely represented and warranted to this defendant that said tractor would pull the plows sold therewith in usual and ordinary plowing at a depth of 10 inches in the soil, and that this defendant, believing and relying wholly upon the representations and warranties so made entered into the agreement aforesaid."

What constitutes a warranty is defined by section 5121, Comp. Laws Utah 1917:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon, no affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be considered as a warranty."

A representation that is untrue or false does not ipso facto constitute fraud. Unless made with knowledge of the falsity, or made recklessly and without belief in its truth, a naked misrepresentation is not fraudulent in law, except for the purpose of rescission, when the parties are placed in statu quo before or at the time rescission is demanded. The demarcation between breach of warranty and fraud is clearly defined in Black on Rescission and Cancellation, § 23. The author says:

"Fraud is distinguished from breach of warranty in this respect: That, in the case of fraud, there is a guilty knowledge of the falsity of the representation on the part of the party making it, while in a breach of warranty there is not this guilty knowledge. 'The same transaction cannot be characterized as a warranty and a fraud at the same time. A warranty rests on contract, while fraud or fraudulent representations have no element of contract in them,

but are essentially a tort. When judges or law writers speak of a fraudulent warranty the language is neither accurate nor perspicuous. .If there is a breach of warranty, it cannot be said that the warranty was fraudulent with any more propriety than any other contract can be said to have been fraudulent because there has been a breach of it. On the other hand, to speak of a false representation as a contract of warranty, or as tending to prove a contract of warranty, is a perversion of language and of correct ideas.' "

It therefore appears that the allegation quoted from the answer is not a charge of fraud. Nor does the record contain any evidence whatever tending to prove fraud. In harmony with the undisputed evidence, the trial court found:

"That the tractor would not pull the plows sold in usual and ordinary plowing at a depth of 10 inches in the soil, so represented and warranted by said Ritchie Motor Company."

The question now rises whether defendant could in his contract waive, as against the assignee, the breach of warranty. The statute provides that:

"In the case of an assignment of a thing in action, an action by the assignee is without prejudice to any set-off or other defense existing at the time or before notice of the assignment." Comp. Laws Utah 1917, § 6496.

In another section it is provided that when cross-demands have existed between persons under such circumstances that, if one had brought an action against the other a counter-claim could have been set up, the two demands shall be deemed compensated, so far as they equal each other and neither can be deprived of the benefit thereof by the assignment or death of the other. Section 6578, supra. May the provisions of the statutes referred to be waived by one who enters into a written contract for the purchase of goods? It cannot be said that it is against public policy for a purchaser to waive warranty and thus estop himself from complaining of a breach of warranty. It will be noticed that paragraph 8 of the contract between defendant and plaintiff's assignor not only provides that in event of its assignment the purchaser shall be precluded from in any manner attacking its validity on the ground of fraud, duress, mistake, want or failure of consideration, or upon any other

ground; but it is in addition provided that the moneys thereunder payable by the purchaser "shall be paid to such assignee or holder without recoupment, set-off or counterclaim of any sort whatever."

In the absence of fraud or duress, a purchaser may certainly in a written contract waive any set-off or counterclaim that he may have. Waiver is defined as    **4** a voluntary abandonment of some known right or advantage, and does not necessarily depend upon any new or additional consideration. 4 Words and Phrases (2d Ed.) p. 1222; *O'Donnell* v. *Parker*, 48 Utah, 578, 160 Pac. 1192; *Schwab Safe & Lock Co.* v. *Snow*, 47 Utah, 199, 152 Pac. 171. If a purchaser desires to waive the warranty that had been given him, why can he not do so, and that for the benefit of the seller or assignee, or both, or either? For a purchaser to sign a contract containing such a stipulation may not be a wise thing to do, but courts cannot rewrite contracts into which parties have seen fit to enter, and unless fraud or duress, or something against public policy, enters into the transaction, a purchaser who waives defenses, as the defendant has done, cannot obtain relief from an improvident contract, into which he enters without care and foresight.

It is also urged that the court erred in finding that defendant had abandoned his defense to the effect that plaintiff was not authorized to do business under the laws of the state of Utah. The evidence shows plaintiff to be a corporation under the laws of California, where it does business; that the contract was forwarded to the plaintiff in California, and that it was there purchased by plaintiff. It was immaterial whether the defense was abandoned. So far as this issue was concerned, there was no defense to abandon. The mere act of accepting an assignment of an obligation against a citizen of this state by a foreign corporation is not doing business, within the contemplation of the law. *General Motors Acceptance Corp.* v. *Lund*, 60 Utah 247, 208 Pac. 502.

The judgment is affirmed, with costs.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.